IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPIN MASTER LTD. *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 24-cv-12480 |
| v. ) | |
| ) | Judge Franklin U. Valderrama |
| The Partnerships and ) | |
| Unincorporated Associations ) | |
| Identified on Schedule A, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Plaintiff's motion for leave to file under seal. R. 3, Mot. Seal. Plaintiff asks this Court for leave to file under seal the list of Defendants identified in "Schedule A" to the Complaint (which lists the online seller names and their URLs). Plaintiff also asks this Court to seal related material supporting the request for a temporary restraining order. For the following reasons, the Court denies the motion [3]. On or before December 17, 2024, Plaintiff is directed to file the provisionally sealed documents [2] and [18] publicly on the docket. Alternatively, Plaintiff may file a notice of dismissal.

## Statement

Plaintiff filed a complaint against one hundred of would-be counterfeiters, seeking damages for selling goods which allegedly infringe upon Plaintiff's copyright. In the meantime, Plaintiff asks for a temporary restraining order. Plaintiff does not, however, make that request out in the open, instead requesting an *ex parte* temporary restraining order (TRO) R. 14, as well as filing a motion for leave to seal, R. 3. Plaintiff wants to seal "Schedule A" to the complaint, which is a list of 100 defendants and their websites. Plaintiff also asks to seal the screenshots of the infringing websites attached to a declaration in support of the TRO.

There is a strong presumption of openness in judicial proceedings. "Secrecy in judicial proceedings . . . is disfavored." *Mueller v. Raemisch*, 740 F.3d 1128, 1135 (7th Cir. 2014); *see also Mitze v. Saul*, 968 F.3d 689, 692 (7th Cir. 2020) (per curiam) (noting that "a strong presumption exists in favor of publishing dispositional orders"); *Duff v. Cent. Sleep Diagnostics, LLC*, 801 F.3d 833, 844 (7th Cir. 2015) (noting that

"secrecy in judicial proceedings is generally disfavored"). "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). Documents that "influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 545 (7th Cir. 2002); *see also Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) ("Even disputes about claims of national security are litigated in the open."). "The reason for this right of public access to the judicial record is to enable interested members of the public, including lawyers, journalists, and government officials, to know who's using the courts, to understand judicial decisions, and to monitor the judiciary's performance of its duties." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013). "Information that affects the disposition of litigation belongs in the public record unless a statute or privilege justifies nondisclosure." *See United States v. Foster*, 564 F.3d 852, 853 (7th Cir. 2009).

A party who wants to depart from that longstanding tradition, and litigate in secret, carries a heavy burden. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 566 (7th Cir. 2018) ("Because there is a strong presumption toward public disclosure of court files and documents, courts resolving such motions have placed the burden on the party seeking confidentiality to show good cause for keeping the documents from public view.") (cleaned up). Plaintiff does not meet its burden here. Plaintiff's explanation for the request for secrecy is rather cursory: "Sealing this portion of the file is necessary to prevent the Defendants from learning of these proceedings prior to the execution of the temporary restraining order. If Defendants were to learn of these proceedings prematurely, the likely result would be the destruction of relevant documentary evidence and the hiding or transferring of assets to foreign jurisdictions, which would frustrate the purpose of the underlying law and would interfere with this Court's power to grant relief." *See* Mot. Seal.

Such a request is common in "Schedule A" counterfeit product cases. This lawsuit is one of hundreds of "Schedule A" cases filed in this District. As another court in this District recently pointed out in a similar order denying a motion to seal, "[e]ach year, the Schedule A bar files hundreds of counterfeiting cases in this District against foreign sellers, who peddle fake goods on the internet." *Zorro Prods., Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, 2023 WL 8807254, at *2 (N.D. Ill. Dec. 20, 2023). "It has become the Northern District of Illinois vs. The Internet." *See BRABUS GmbH v. Individuals Identified on Schedule A Hereto*, 2022 WL 7501046, at *1 (N.D. Ill. Oct. 13, 2022). Generally, the Schedule A bar uses the same template in each case, and the draft language in the proposed TRO reflects that reality. *See Zorro Prods.*, 2023 WL 8807254, at *2. Plaintiff here offers "the same cut-and-paste

boilerplate that is pressed into service in countless Schedule A cases, often word for word." *Id.* Indeed, like the *Zorro* court, this Court has recently resolved motions to seal in myriad Schedule A cases, all of which used the same or similar language. *See, e.g.*, *TV Tokyo Corporation v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, 24-cv-09810 Dkts. 7, 22 (N.D. Ill.); *Gao v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 24-cv-09742 Dkts. 7, 11 (N.D. Ill.); *Yiwu Baimei Electronic Commerce Co., Ltd., a Chinese Limited Corporation v. The Partnerships And Unincorporated Associations Identified On Schedule A*, 24-cv-09304, Dkts. 10, 11 (N.D. Ill.); *Nike, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 24-cv-08747 Dkts. 3, 21 (N.D. Ill.); *Anagram International, LLC v. The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified in Schedule A*, 24-cv-07759 Dkts. 4, 9 (N.D. Ill.); *Anagram International, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 24-cv-07285 Dkts. 13, 19 (N.D. Ill.).[1] Six different law firms filed those six Schedule A cases, and all six law firms used identical or nearly identical language in their motions to seal.

Here, Plaintiff advances no plausible reason to think that the sellers of fake Al Agnew goods would destroy documents in this particular case. As the *Zorro* court observed, "[a]s a practical matter, defendants typically don't produce documents in Schedule A cases anyway. Almost all of them fail to participate in the suit and eventually get tagged with a default judgment." 2023 WL 8807254, at *3. Defendants in Schedule A cases usually are foreign sellers who do not produce any documents, so sealing a case to protect documents is likely to be a moot point. What's more, the possibility of document destruction provides little basis for sealing documents in the short term, because Plaintiff states in its motion to seal that it plans to move to unseal the documents after serving the TRO.

Additionally, as the *Zorro* court also pointed out, the fact that Plaintiff wants a temporary restraining order to prohibit counterfeiting is not a compelling reason to maintain documents under seal, either. To the contrary—the point of this lawsuit is to stop Defendants from selling counterfeit goods and to hold them accountable for the counterfeit goods they have sold so far. "An order prohibiting counterfeiting won't do much good unless Defendants are told to stop counterfeiting. An order to stop counterfeiting requires publicity, not secrecy." *Zorro Prods.*, 2023 WL 8807254, at *3.

---

[1] The Court acknowledges that in those six cases, and until recently in other Schedule A cases, the Court granted Plaintiffs' requests to seal documents. However, upon review of the court's reasoning in *Zorro*, the Court agrees with that court, that for the most part, requests for leave to seal in Schedule A cases—at least those based upon the limited reasoning presented in most motions—is not warranted under the Seventh Circuit's strict standards for permitting secret filings.

Finally, Plaintiff posits that sealing is required because of its request for an asset freeze. But the Court again agrees with the *Zorro* court that "the possibility of transferring assets offshore isn't much of a reason to proceed in secret in a Schedule A case." *Zorro Prods.*, 2023 WL 8807254, at *3.

As the court in *Zorro* explained, the Supreme Court has made clear that courts lack the power to issue an asset freeze at the beginning of a case, unless that party is seeking equitable monetary relief. 2023 WL 8807254, at *4 (citing *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999)). In *Grupo Mexicano*, the Supreme Court held that a district court has "no authority to issue a preliminary injunction preventing [a defendant] from disposing of their assets pending adjudication of [plaintiff's] contract claim for money damages." *Id.* at 333. The Supreme Court reinforced the long-standing rule that "a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property." *Id.* at 321. "[A]s a general matter [] prejudgment asset restraints are not proper simply to establish a fund from which a later award of money damages can be satisfied." *See Banister v. Firestone*, 2018 WL 4224444, at *9 (N.D. Ill. Sep. 5, 2018). True, an equitable restraint at the outset of the case might be appropriate if a plaintiff requested and received equitable monetary relief at the end of the case, like restitution or disgorgement of ill-gotten gains. *See Deckers Outdoor Corp. v. Unincorporated Associations Identified on Schedule A*, 2013 WL 12314399 (N.D. Ill. Oct. 31, 2013); *see also* 1 D. Dobbs, Law of Remedies § 4.1(1) (2d ed. 1993) ("Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain. It differs in its goal or principle from damages, which measures the remedy by the plaintiff's loss and seeks to provide compensation for that loss.").

But, as the *Zorro* court noted, as a practical matter, in Schedule A cases, that recovery almost never happens. Schedule A plaintiffs typically don't request and receive equitable monetary relief. *Zorro Prods.*, 2023 WL 8807254, at *4. "Instead, Schedule A plaintiffs rush into court, request and receive an asset freeze, and obtain a default judgment. And then, the Schedule A plaintiffs ask district courts to unfreeze the money and award statutory damages, not equitable relief." *Id.* Similar to the *Zorro* court, it is not clear to this Court that in the foregoing scenario, it would be appropriate to use any frozen funds for any recovery of statutory damages, because statutory damages are a remedy at law, not a remedy in equity.

In this Court's experience with numerous Schedule A cases, cases proceed in the following manner, described by the *Zorro* court, "the Schedule A plaintiffs' bar asks courts in this district to lock down assets through an asset freeze on day one of a case, and do so under seal. And then, at the end of the case, Schedule A plaintiffs simply ask the Court to bless an order requiring third parties to hand over all of the frozen funds. The Schedule A plaintiffs receive a remedy at law, not a remedy in

4

equity, which means that there was no justification for an asset freeze in the first place." *Zorro Prods.*, 2023 WL 8807254, at *4.

In sum, like the *Zorro* court, this Court might entertain a request to file under seal if Plaintiff was seeking an asset freeze that this Court could grant, meaning an asset freeze for the limited purpose of allowing equitable relief down the road. But in the instant case, "Plaintiff has not shown that it will seek equitable monetary relief at the end of the case, so there is no basis for an asset freeze now. If there is no basis for an asset freeze now, then there is no reason to proceed under seal now." 2023 WL 8807254, at *4–5.

For the foregoing reasons, the motion to seal is denied. On or before December 17, 2024, Plaintiff is directed to file the provisionally sealed documents [2] and [18] publicly on the docket. Alternatively, Plaintiff may file a notice of dismissal.

Date: December 10, 2024

                                                          United States District Judge
                                                          Franklin U. Valderrama